W. M. CASON & BRO. v. T. C. CONNOR AND J. L. WESTFALL.

No. 3353.

1. **Practice in Supreme Court.**—This court will not revise on appeal an issue not raised in the trial court and first raised on appeal.   See facts.

2. **Waiver —Appeal from Justice Courts.**—Suit in Justice Court upon notes, and for foreclosure of chattel mortgage.   An intervenor sought priority of lien upon the property.   Judgment was rendered in Justice Court ordering sale of the property for benefit pro rata of the plaintiffs and the intervenor.  Appeal bond to District Court made by plaintiffs omitted the defendants, being payable to intervenor.  The case went to trial in the District Court.   Such recognition of the jurisdiction of the District Court was a waiver of objection to the bond.

3. **Practice—Findings of Fact.**—See case illustrating the injury following the failure and refusal of the trial judge to amend his findings when the omissions were called to his attention.  Bill of exceptions having been taken to the refusal, it is ground for complaint.

4. **Subrogation.**—Subrogation may arise from the agreement of parties or by implication in equity to prevent fraud or injustice.

5. **Same.**—Where one or more promissory notes of a series secured by mortgage are taken up by a third party subrogation in absence of fraud will not be recognized as against the original holder until all of said notes are taken up.   Until his entire claim shall be paid his security remains upon the property bound for the several notes. See illustration.

APPEAL from Morris.   Tried below before Hon. JOHN L. SHEPPARD.

On November 29, 1889, W. M. Cason & Bro., appellants, filed in the Justice Court of Precinct No. 5 of Morris County, Texas, two notes for $30.60 each, and a balance due by judgment of $25.59, and asked a foreclosure of a mortgage lien given to secure said indebtedness, against the defendant J. L. Westfall.   Defendant J. L. Westfall, on February 14, 1890, filed his answer, in which is a general denial and offsets.   Intervenor T. C. Connor, on January 13, 1890, filed his plea of intervention, in which he pleaded that he paid Cason & Bro. $160 of the indebtedness due them by the defendant Westfall, and that appellants represented to him that that was all that Westfall owed appellants; and that he was subrogated to the rights of appellants in the mortgage, and that appellants are estopped from foreclosing their mortgage lien against the defendant Westfall until intervenor gets his amount back he paid appellants for Westfall; and that if appellants are permitted to foreclose their lien against Westfall and intervenor, that intervenor's mortgage be also foreclosed against the said Westfall for the debt due him, and that the court direct the property sold; and that his debt be paid first, and the residue, if any, be paid to appellants.

On February 10, 1890, ·appellants filed their answer to intervenor's petition, in which they pleaded a general denial, and that in May, 1888, the defendant J. L. Westfall bought a pair of mules and a wagon from appellants and gave his nine promissory notes therefor, and also a mort-

gage on said property to secure said notes; that five of said notes had been put into judgment without foreclosing the lien, and that on April 10, 1889, intervenor wrote appellants that he would pay appellants $30 per month until he paid them $160 of the debt due them by Westfall; and that on October 3, 1889, intervenor, with full knowledge of appellants still claiming a balance due them from the defendant Westfall, and that they claimed their lien against said property, voluntarily settled with appellants and paid them the $160; and prayed for a foreclosure of their mortgage lien against both intervenors and defendant J. L. Westfall.

On February 14, 1890, W. M. Cason & Bro., plaintiffs, recovered a judgment against the defendant J. L. Westfall for $104.20, and 12 per cent interest per annum from date of judgment, and a foreclosure of their mortgage lien on the mules and wagon, as to both the defendant and intervenor.

On February 22, 1890, intervenor filed in the Justice Court his appeal bond, binding himself and his sureties to pay to plaintiffs W. M. Cason & Bro., the sum of $550.

On March 17, 1890, the transcript from the Justice Court was duly filed in the District Court of Morris County. On October 25, 1890, this cause was submitted to the court without a jury, and the court rendered a judgment in favor of appellants against the defendant J. L. Westfall for $113.43, with 12 per cent per annum from date of judgment and a foreclosure of appellants' lien on the property; and the court also rendered a judgment for intervenor against the defendant J. L. Westfall for the sum of $180.26, with 12 per cent interest per annum from date of this judgment and a foreclosure of intervenor's mortgage lien on said property, and that said property be ordered sold, and that the proceeds arising from said sale be divided between appellants and intervenor, according to their respective amounts of the judgments rendered herein, etc. To which judgments appellants excepted, and in open court gave notice of appeal.

On October 27, 1890, appellants filed a motion requesting the court to find and file its conclusions of fact and law.

On October 31, 1890, the court filed its conclusions of fact and law. On same day appellants filed a motion requesting the court to find and file its conclusions of fact and law on other issues, and on same day, the court declining to do so, gave appellants a bill of exceptions to its action.

The plaintiffs below alone have prosecuted this appeal. [Statement with opinion.]

*J. F. Jones*, for appellants.—1. An appeal bond should be made payable to all parties adversely interested to the party appealing. Meade v. Bartlett, 77 Texas, 366; Young v. Russell, 60 Texas, 684.

2. When the court fails to find and file its conclusions of fact and law on issues made by the pleadings and evidence, and its attention being called to same by motion within a reasonable time after filing its conclusions of fact and law, the court should comply with said request. Railway v. Fossett, 66 Texas, 338; Callaghan v. Grenet, 66 Texas, 236; North v. Lambert, 3 Ct. App. C. C., sec. 53.

3. Intervenor would have no right to share in the proceeds of the sale of the mules and wagon with appellants until appellants were first paid in full, unless appellants by some act, declaration, or contract of theirs with intervenor would estop themselves.

*J. M. Moore*, for appellees.—1. It is too late to insist upon objections in the Supreme Court which were not made in the court below. Hansborough v. Towns, 1 Texas, 58; Mims v. Mitchell, 1 Texas, 443; Allen v. Traylor, 31 Texas, 124.

2. Where no objection is made in the District Court to a bond on an appeal from a Justice Court, no objections will be heard in the Supreme Court. McGarrah v. Burney, 4 Texas, 287; Zapp v. Michaelis, 56 Texas, 395.

3. The court having found that intervenor had paid appellants $160 of the debt due them by Westfall, with the understanding that he (intervenor) was to be subrogated to their rights under the mortgage lien against Westfall, the judgment of the court in foreclosing said lien and ordering the property sold and proceeds prorated on appellants' and intervenor's debts in proportion to the sum due them respectively, was and is in accordance with law and equity. Dillon v. Kauffman & Runge, 58 Texas, 696; Delespine v. Campbell, 52 Texas, 12; Bank v. Beard, 49 Texas, 359.

MARR, JUDGE, *Section A.*—It is first assigned as error that the court below should have dismissed the appeal of the intervenor T. C. Connor from the judgment of the Justice Court, because his appeal bond was not made payable to J. L. Westfall as well as to the appellants; and because, as it is claimed, the judgment of the last named court was not final. How the District Court could reasonably be expected to have taken such action we are unable to perceive, since no such issue or question, by motion or otherwise, was raised in that tribunal. In view of another trial, we may say that the motion to dismiss, should one hereafter be filed, would come too late after the parties have all voluntarily submitted to the jurisdiction of the District Court. We have heretofore expressed our views upon this subject in the case of Cason v. Laney, 82 Texas, 317. We will also add that the judgment as rendered in the Justice Court appears to us to possess all of the elements of a final judgment, and is unusually specific for an inferior tribunal

to render. Westfall has in nowise complained that he is not protected by the bond, and he is the only one interested in the question.

The appellants further insist that the court below, by its judgment, erred in allowing the intervenor to participate upon an equal footing with them in the proceeds which will be realized from the sale of the mortgaged property described in the statement of the case; and also in not finding additional conclusions of fact and law as requested by their counsel upon material issues in the case, and which are not embraced in the findings of the court as filed in the record. The proper solution of these questions will require the statement of the material findings as in fact made by the court.

The conclusions of the court upon the contested issues of fact are as follows: That the defendant Westfall had given plaintiffs nine promissory notes for $30.60 each, due respectively thirty days after date of each note, beginning on May 9, 1888, in payment of a wagon and two mules, at which time Westfall executed and delivered to the plaintiffs a mortgage lien in writing on said wagon and mules to secure the payment of said notes. In the latter part of 1888, plaintiffs offered to sell said claim and mortgage to the intervenor for $160—the defendant Westfall having paid a part of said notes to plaintiffs—but the intervenor declined to buy.

On the 10th day of April, 1889, intervenor wrote the following letter to plaintiffs, viz.:

"DAINGERFIED, TEXAS, April 10, 1889.

"*Messrs. W. M. Cason & Bro., Cason, Texas:*

"Mr. J. L. Westfall says he is indebted [written "indebtedness"] to you in the sum of $160, for which you have a judgment foreclosing your mortgage lien upon his mules and wagon, and he says that you told him if I would pay $30 per month for him until the *amount due* on his wagon and team was paid out that you would indulge him. This is to say that I will pay the $30 per month until the amount *due* on his wagon and team is paid out, counting from this date.

"T. C. CONNOR."

This letter is indorsed: "Paid October 3, 1889. J. F. Jones, attorney for W. M. Cason & Bro."

The court further finds, "that plaintiffs accepted intervenor's proposition" as contained in the letter, and that he "carried out his proposition as therein contained, with the *understanding* (that) he was to be *subrogated* to the rights of plaintiffs under said mortgage; that Westfall owed plaintiffs on said nine notes a balance of $113 over and above the $160 paid to him (them) by intervenor."

The description of the judgment rendered as given in the statement of the case above will indicate what were the conclusions of law. The

relief granted, it may be observed, was not of that character which either party prayed for, nor does it amount to a subrogation in favor of the intervenor. The effect is to place both the plaintiffs and the intervenor in the same attitude in reference to the property mortgaged as if they held contemporaneous liens of equal dignity. 52 Texas, 12; 49 Texas, 359. It is to be inferred from the pleadings that the intervenor also took a written mortgage upon the property from Westfall to secure the sum advanced for him as above stated. It will be seen that the learned judge in his conclusions does not find with whom, if any one, the intervenor had "the understanding that he was to be subrogated to plaintiffs' rights under the mortgage," nor does he find upon the issue of an estoppel, arising from the alleged representations of the plaintiffs that their claim to or lien upon the property was only $160, etc.; nor whether the intervenor knew, at the time of the payment of the $160, that the plaintiffs claimed a lien under the mortgage on the property for the balance of their debt, etc., as contended by them. These omissions, among others, in the conclusions of the court were promptly and distinctly pointed out in the written request presented by counsel for plaintiffs to the court for additional findings upon these issues; but the court refused to comply with the motion, and appellants duly excepted as already stated. In view of the uncertainty of the court's findings in the particulars complained of, the facts as found by it do not in our opinion warrant the judgment which was rendered in the case, and we think that the court erred in refusing to grant the motion of the plaintiffs for distinct findings upon the controlling issues raised by the pleadings, and upon which there must have been some evidence, as we presume from what the court did find in a general way. The findings are incomplete, and do not embrace sufficient facts or conclusions of fact as would enable the appellants "to take their appeal or writ of error without a statement of facts or further exception in the transcript." Rev. Stats., art. 1333; Callaghan v. Grenet, 66 Texas, 236; Railway v. Fossett, 66 Texas, 338; Andrews v. Key, 77 Texas, 35.

We shall now advert briefly to the question of subrogation and priority of liens under the facts of this case, as presented in the other assignments of error. Subrogation may arise from the agreement of the parties, or by implication in equity to prevent fraud or injustice. The doctrine is well recognized in this State, and has been interpreted repeatedly in the adjudications of the Supreme Court, but in every case which we have examined it appears that the original creditor has been fully satisfied before the substitution was enforced. Hicks v. Morris, 57 Texas, 658; Dillon v. Kauffman, 58 Texas, 696; Land Co. v. Blalock, 76 Texas, 85; French v. Grenet, 57 Texas, 274. No one of these decisions, however, determine the exact point now before us. We are of the opinion that if the intervenor paid the $160 to the plaintiffs under the belief arising from the conduct or representations of the plaintiffs

made to him that this amount was the full extent of their claim to or lien upon the mortgaged property, then, if he was thereby misled or deceived, he should be allowed a priority of liens, and would be entitled to the satisfaction of his claim out of the property before the plaintiffs should be permitted to participate in the proceeds of the sale of such property. But, upon the other hand, if he shall fail to establish his plea of estoppel, then we think that he would merely occupy the position of a junior mortgagee, possessing only the right, as against the plaintiffs, to pay off the prior incumbrance, or take the residue of the proceeds after the plaintiffs' demand shall have been fully satisfied. This necessarily results from the familiar rule and principle in equity, founded upon common sense, that there can be no subrogation (aside from estoppel) until the original creditor's demand has been entirely satisfied and his dependence upon the security finally terminated with his consent. When his debt has been only partially paid, it would be unreasonable to hold that the third party who made such payment thereby acquired a precedence over him, or was even placed upon an equal footing, in reference to the security for the payment of the remainder of his debt. "No claim by subrogation, whether conventional or by operation of law, to the securities held or remedies enjoyed by a creditor for the collection of his demand can be enforced until the whole demand of the creditor has been satisfied. Until then there can be no interference with the creditor's rights or securities which might, even by a bare possibility, prejudice or in any way embarrass him in the collection of the residue of his demand. * * * Any agreement, whether made by the creditor or debtor, for the substitution of the person advancing money for the payment of a debt, to the securities, remedies, or priorities of the creditor, will, to the extent of the agreement, be enforced in equity." Sheld. on Sub., sec. 248, p. 286, quoting mainly from the case of Railway v. Martindyke, 27 N. J. Eq., 658; see also Association v. Thompson, 32 Id., p. 133, and Neely v. Jones, 16 W. Va., 625. The creditor, however, must be fully paid unless he agrees to the substitution upon the partial payment of his debt.

It follows, as we think, that the judgment of the District Court as rendered is erroneous and ought to be reversed; but in view of the indefiniteness in the findings of fact, we are not sure that the proper judgment could be here now rendered, and therefore we believe that the cause should be remanded for another trial in accordance with this opinion.

*Reversed and remanded.*